```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/17/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
JOSE REINALDO YUQUILEMA MULLO and :
SILVERIO FLORES, :
                               Plaintiffs, :
                                          :
                   -against- :   22-CV-2430 (VEC)
                                          :
                                          :   ORDER & OPINION
DOORDASH, INC., ERIN ANDEREGG, and TONY :
XU, :
                                          :
                                Defendants. :
                                            :
-------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs have sued DoorDash, Inc., and its employees Erin Anderegg and Tony Xu (collectively "DoorDash"), for various violations of federal and state wage and hour laws. *See* Compl., Dkt. 1 Ex. 2 ¶¶ 3–5, 12–15. After this case was removed from state court, Not. of Removal, Dkt. 1, Defendants moved to compel arbitration, to strike the Complaint's class allegations, and to stay the case. Def. Mot., Dkt 10. Plaintiffs opposed the motion. Pl. Opp., Dkt. 21. For the reasons discussed below, Defendants' motion is GRANTED.

## BACKGROUND[1]

Flores and Mullo worked as deliverymen for DoorDash from July 2018 to November 2020 and July 2019 to May 2021, respectively. Compl. ¶¶ 8–9, 41, 56. Plaintiffs allege that DoorDash violated various federal and state labor laws during this time. *See, e.g., id.* ¶¶ 3–5.

---

[1] Although not raised by the parties, recent case law seems to suggest some disagreement among courts in this circuit concerning the appropriate standard to apply on a pre-discovery motion to compel arbitration. *Compare Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary judgment standard) *with Aleksanian v. Uber Techs. Inc.*, 524 F. Supp. 3d 251, 258 (S.D.N.Y. 2021) (applying a motion to dismiss standard). Because the parties do not dispute the material facts relevant to the motion to compel arbitration, the Court need not resolve this conflict for the purposes of this motion.

When registering to work as deliverymen for DoorDash, an app-based delivery company, Plaintiffs were presented with a hyperlink to DoorDash's Independent Contractor Agreement (ICA) and a notice informing them that, by continuing with the registration process, they agreed to the terms of the ICA.  *See* Def. Mem., Dkt. 11 at 2–3.  The first page of the ICA contains bolded text stating that the ICA contains an arbitration clause.  *Id.* at 4; *see also, e.g.*, Shao Decl. Ex. 5, Dkt. 12 at 1.  The arbitration clause obligates DoorDash and its delivery workers to arbitrate all disputes arising from the ICA, including claims brought pursuant to federal and state labor laws.  *See, e.g.*, Shao Decl. Ex. 5 at 4.  The arbitration clause also includes a waiver of the worker's right to participate in or commence a class action regarding disputes arising out of the ICA, whether in arbitration or in court.  *See, e.g., id*.  Delivery workers can opt out of the arbitration provision at the time of registration but may not do so later.  *See, e.g., id.* at 1, 6.  Plaintiffs did not opt out of the arbitration provision.  Def. Reply, Dkt. 22 at 1.

At the time of contracting, the ICA stated that all arbitration proceedings would be conducted in accordance with the American Arbitration Association's Commercial Arbitration Rules.  *See* Shao Decl. Ex. 3, Dkt. 12 at 7; Shao Decl. Ex. 4, Dkt. 12 at 9.  While Plaintiffs were still working as deliverymen, DoorDash amended the ICA to provide that any arbitration would be conducted in accordance with the International Institute for Conflict Prevention & Resolution ("CPR") Rules.  *See* Def. Reply at 6; Shao Decl. Ex. 5 at 5; Shao Decl. Ex. 6, Dkt. 12 at 9.  CPR has accepted donations from numerous law firms, including Defendants' counsel Littler Mendelson, P.C., and collaborated with DoorDash and its counsel, Gibson Dunn & Crutcher LLP ("Gibson"), to design the arbitration policies for its disputes with delivery workers.  *See* Pl. Opp. at 5–6; Troy Decl. Ex. 1, Dkt. 20 at 1, 4 (listing Gibson and Littler Mendelson, P.C. among

CPRs' donors); Troy Decl. Ex. 2, Dkt. 20 (discussing Gibson's communications with DoorDash); Def. Reply at 7 (same).

## DISCUSSION

I.   **The Motion to Compel Arbitration and Strike Class Allegations Is Granted**

   A.  **Legal Standard**

Pursuant to Section 2 of the Federal Arbitration Act (FAA), "agreements to arbitrate [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[2] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). Because of the "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

"[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties. This question is determined by state contract law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)) (internal citation omitted). If an arbitration agreement exists, the court must also determine "whether the dispute falls within the scope of the arbitration agreement." *Meyer*, 868 F.3d at 74. "In light of the "liberal federal policy favoring arbitration agreements . . . arbitration agreements should be enforced according to their terms unless the

---

[2] Plaintiffs do not contest that the Federal Arbitration Act applies to the parties' agreement to arbitrate, Pl. Opp., Dkt. 21 at 2 (citing the FAA), and the contract does not appear to fall within any of the exemptions set forth in the FAA. In particular, Plaintiffs do not appear to be engaged in interstate commerce. *See* 9 U.S.C. § 1. Plaintiffs state that they "regularly" worked within New York City and do not allege that they worked beyond New York. Compl., Dkt. 1 Ex. 2 ¶¶ 8–9.

FAA's mandate has been overridden by a contrary congressional command." *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013) (cleaned up).[3]

An agreement to arbitrate arbitrability is "an additional, antecedent agreement" that is also covered by the FAA. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)). Unlike other agreements to arbitrate, for which there is a presumption in favor of arbitration, "the law reverses the presumption" for agreements to arbitrate arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1955); *see also Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Accordingly, "the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp.*, 398 F.3d at 208 (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)).

### B. Plaintiffs Clearly Consented to Arbitrate Questions of Arbitrability

The ICA clearly delegates all disputes, other than the enforceability of the class action waiver, to the arbitrator, including disputes regarding whether the arbitration clause "is unenforceable, unconscionable, applicable, valid, void or voidable." Shao Decl. Ex. 3 at 7; Shao Decl. Ex. 4 at 9; *see also* Shao Decl. Ex. 5 at 5; Shao Decl. Ex. 6 at 9. Clauses that delegate to the arbitrator questions regarding whether the arbitration agreement is "void or voidable" satisfy the requirement of "clearly and unmistakably" delegating arbitrability to the arbitrator. *See Rent-A-Center, West, Inc.*, 561 U.S. at 65–66 (enforcing delegation of disputes regarding whether the

---

[3] The Fair Labor Standards Act does not bar waivers of collective or class actions. *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013).

arbitration agreement was "void or voidable"); *see also Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 603 (S.D.N.Y. 2020) (same).

Because section 2 of the FAA states that arbitration agreements are severable from the remainder of the contract, a party seeking to avoid arbitration must specifically challenge the validity of the arbitration agreement, not the contract as a whole. *See Rent-A-Center, West, Inc.*, 561 U.S. at 70–72. By extension, challenges to the validity of an agreement to arbitrate threshold questions of arbitrability must be explicitly addressed to that provision rather than to the arbitration agreement as a whole. *See id.*; *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 128 (2d Cir. 2019). While Plaintiffs generally object to the validity of the arbitration agreement, the opposition brief does not even mention the clause delegating questions of arbitrability to the arbitrator. Because Plaintiffs have provided no grounds upon which the Court might invalidate that clause, the validity of the arbitration agreement must be decided by the arbitrator.

### C. The Motion to Strike Class Allegations Is Granted

The Supreme Court has clearly established that an arbitration agreement may validly require a party to waive his or her right to participate in a class action, whether in arbitration, *see AT&T Mobility LLC*, 563 U.S. at 347–48, or in court, *see Epic Sys. Corp.*, 138 S. Ct. at 1619, 1623. Courts appropriately enforce these waivers by striking class allegations from complaints when the complaints fail to state any grounds upon which plaintiffs could plausibly pursue their claims through a class action. *See Haymount Urgent Care PC v. GoFund Advance, LLC*, No. 22-CV-1245, 2022 WL 6994507, at *1 (Oct. 12, 2022); *Davarci v. Uber Techs.*, 2021 WL 3721374, at *5 n.11, *15 (S.D.N.Y. Aug. 20, 2021).

Plaintiffs do not contest that they voluntarily signed the ICA, which includes an agreement to arbitrate all disputes on a bilateral basis.[4] *See* Pl. Opp. at 1; Def. Reply at 1. Rather, Plaintiffs advance a grab-bag of arguments to support their position that the class waiver is unenforceable as a matter of state contract law.[5] *See* Pl. Opp. 6–8.

Plaintiffs first argue that their consent was defective because they were not fluent in English. Pl. Opp. at 8. The ICA, however, was also available in other languages. *See* Def. Reply at 10. Furthermore, Plaintiffs have failed to substantiate their assertion that language barriers prevented them from understanding the ICA. But even if they had, the fact that a worker had "an imperfect grasp of the English language" does not invalidate his consent to arbitrate disputes with the hiring entity; the worker is obliged to seek assistance in understanding the document prior to signing. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010).

While Plaintiffs' opposition brief is not a model of drafting, Plaintiffs appear also to argue that they were coerced or deceived into consenting to the class waiver because DoorDash failed to disclose financial links between defense counsel and the CPR. Pl. Opp. at 7–8. Putting aside the internal inconsistency between Plaintiffs' claim that their consent was defective because they could not read the ICA and their assertion that they would have not consented to

---

[4] The ICA is periodically amended by DoorDash; while delivery workers are always affirmatively notified of such amendments, they are not always required affirmatively to assent to the new terms. *See* Def. Mem., Dkt. 11 at 4; Shao Decl., Dkt. 12 ¶¶ 14–15. An arbitration agreement is valid, however, even "[w]here there is no evidence that the offeree had actual notice of the terms of the agreement . . . if a reasonably prudent user would be on inquiry notice of the terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012)).

[5] New York state law applies to this dispute. *See* Def. Mem. at 10; Pl. Opp. at 3. The ICA selects the law of the state in which the delivery worker performed the majority of his or her work for DoorDash; Plaintiffs allege that they "regularly worked" within New York and do not allege that they worked anywhere else. *See* Compl. ¶¶ 8–9; Shao Decl. Ex. 3, Dkt. 12 at 9; Shao Decl. Ex. 4, Dkt. 12 at 12; Shao Decl. Ex. 5, Dkt. 12 at 7; Shao Decl. Ex. 6, Dkt. 12 at 14.

the ICA if it had included such disclosures, Plaintiffs' arguments are unavailing. Defendants do not have a duty to disclose public information regarding CPR's donors, including Defendants' counsel, which would have easily been available to Plaintiffs through a "surface inquiry." *Banque Arab Et Internationale D'Investissement v. Md. Nat'l Bank*, 850 F. Supp 1199, 1217 (S.D.N.Y. 1994). Plaintiffs' opposition brief largely draws on information regarding CPR's finances that is available on CPR's website and could have easily been found through "basic research" during the contracting process.[6] *Id.*; *see also* Troy Decl. Ex. 1, Dkt. 20; Troy Decl. Ex. 3, Dkt. 20.

Finally, Plaintiffs suggest that the purported relationship between DoorDash and CPR renders the class waiver unconscionable. Pl. Opp. at 7–8. Under New York law, "a contract is unconscionable where there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) (cleaned up). Plaintiffs fail to support their suggestion of bias with anything other than rank speculation.

Despite complaining at length that DoorDash "colluded" with CPR to promulgate arbitration rules, Plaintiffs have not pointed to a single CPR rule that is biased against them — rather, Plaintiffs rest their entire argument on the risk of "potential bias." *See, e.g.*, Pl. Opp. at 4; *id*. at 6. Plaintiffs have failed to provide either facts or arguments that even remotely tend to show that, even if their claims about CPR's bias proved true, the applicable CPR rules would not guard against that bias. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (noting that fair arbitration rules "provide protections against biased panels"); *McGrath v.*

---

[6] For example, the list of CPR's corporate and law firm members is available online at "Annual Review," CPR, https://www.cpradr.org/about/annual-review (last visited Jan. 17, 2023).

*DoorDash, Inc.*, No. 19-CV-5279, 2020 WL 6526129, at *10 (N.D. Cal. Nov. 5, 2020) ("[E]ven though Gibson Dunn's involvement . . . may raise some concern, the ultimate question is whether the Protocol is fair and impartial.").[7]

In light of the strong federal policy in favor of enforcing arbitration agreements, courts "decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Gilmer*, 500 U.S. at 30 (internal quotation omitted); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 239 (2013) (Thomas, J., concurring) (noting that the FAA's policy in favor of arbitration extends to agreements to arbitrate disputes on a bilateral basis). If Plaintiffs are correct that the CPR process is biased against them, the FAA already contemplates a process through which they can be protected; courts can "overturn arbitration decisions '[w]here there was evident partiality or corruption in the arbitrators.'" *Gilmer*, 500 U.S. at 31 (quoting 9 U.S.C. § 10(b)). The FAA does not, however, allow a plaintiff to avoid arbitration altogether based on speculation that the process will be unfair.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and to strike Plaintiffs' class claims is GRANTED. This action is STAYED pending the conclusion of individual arbitration of Plaintiffs' claims. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.

---

[7]  The cases cited by Plaintiffs regarding arbitrator bias are wholly inapposite; they concern situations in which the arbitration rules were obviously lopsided. For example, in *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), Hooters "promulgat[ed] so many biased rules" — including rules enabling it to dictate the membership of the arbitral panel — that arbitration became "a sham system unworthy even of the name of arbitration." *Id.* at 940; *see also Floss v. Ryan's Fam. Steak Houses*, 211 F.3d 306, 313 n.7, 315–16 (6th Cir. 2000) (denying motion to compel arbitration where the employer could unilaterally alter the arbitration rules and appoint its own employees to arbitrate the claim); *see also Walker v. Ryan's Fam. Steak Houses*, 400 F.3d 370, 378, 386 (6th Cir. 2005) (same). Plaintiffs have not argued that DoorDash can dictate the individual arbitrators on a specific case or unilaterally alter the applicable arbitration rules, which are promulgated by CPR.

2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). The parties must submit a joint update on the status of arbitration every six months, on the fifteenth of that month, or if the fifteenth falls on a weekend or holiday, on the first business day thereafter. The first update is due on **June 15, 2023**.

      The Clerk of Court is respectfully requested to terminate the open motion at docket entry 10 and to STAY the case.

**SO ORDERED.**

Date:  January 17, 2023  
          New York, NY

                                              **VALERIE CAPRONI**  
                                              **United States District Judge**